629 P.2d 1035

Billy Ray BANKS, Appellant,

v.

The ARIZONA STATE BOARD OF PARDONS & PAROLES, Appellee.

Ralph BEN–DAVID aka Ronald David Gomes, Appellant,

v.

The ARIZONA STATE BOARD OF PARDONS & PAROLES, Appellee.

No. 1 CA–CIV 5128.

Court of Appeals of Arizona,
Division 1,
Department A.

June 4, 1981.

Ross P. Lee, Maricopa County Public Defender, by Anne Kappes, Deputy Public Defender, Phoenix, for appellants.

Robert K. Corbin, Arizona Atty. Gen., by JoAnn C. Gaffaney, Asst. Atty. Gen., Phoenix, for appellee.

## OPINION

OGG, Judge.

This is a joint appeal by Billy Ray Banks and Ralph Ben-David from a judgment denying special action relief. The sole issue on appeal is whether the Arizona Board of Pardons and Paroles is required to provide a written statement of reasons for denying an application for commutation of sentence. We hold that the Board is not required to provide such a statement and accordingly affirm the judgment.

Both appellants are inmates of the Arizona State Prison. On July 5, 1978 and August 1, 1978, appellants Banks and Ben-David, respectively, applied to the Board of Pardons and Paroles for commutation of their sentences. Appellant Banks received a written document dated October 12, 1978 stating, "It has been decided not to recommend your commutation of sentence to the Governor." Appellant Ben-David received a similar statement dated October 11, 1978.

Each appellant filed a petition for writ of special action on November 22, 1978 in the Maricopa County Superior Court asking the court to direct the Board of Pardons and Paroles to provide reasons for denial of his application for commutation of sentence. These actions were consolidated and heard on December 20, 1978. The parties subsequently submitted a statement of agreed facts and filed legal memoranda. On August 29, 1979 the court entered judgment denying appellants' petitions.

Appellants claim that they are entitled to reasons for denial of their applications for commutation by virtue of the due process clause of the Fourteenth Amendment to the United States Constitution and the provisions of A.R.S. § 31–411(B). We first address appellants' constitutional claim.

The due process clause applies when government action deprives a person of liberty or property. The determination whether a protectible interest exists requires a consideration of the nature of the claimed interest. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). To constitute a protectible interest:

> [A] person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. *Id.* at 577, 92 St.Ct. at 2709, 33 L.Ed.2d at 561.

While the United States Supreme Court has not directly considered whether there is a constitutionally protected interest in commutation of a sentence, it has held that there is no such interest in parole release. In *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668, 675 (1979), the Court stated:

> There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards, has extin-

guished that liberty right: "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty." *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976).

The Court then went on to distinguish cases holding due process applicable to parole *revocation* from parole *release.* It characterized parole revocation as a decision affecting the loss of an individual's conditional freedom in contrast to an application for release which is a mere anticipation or hope of freedom.

■ This reasoning is equally applicable to an interest in commutation. There is less basis for an Arizona prisoner to anticipate commutation than parole, given that some limited expectancy of parole may be created by the statutory and regulatory scheme establishing parole eligibility. *See* A.R.S. § 41–1604.06; A.C.R.R. R–5–4–202. *See also State ex rel. Arizona State Board of Pardons and Paroles v. Superior Court,* 12 Ariz.App. 77, 467 P.2d 917 (1970). Therefore, we conclude that appellants' interest in commutation of their respective sentences does not by itself trigger due process protections. However, our inquiry does not end here.

In *Greenholtz, supra,* the Supreme Court found that the Nebraska parole statute created an expectancy of release which was entitled to some constitutional protection. However, the Court emphasized that whether any other state statute provides a protectible entitlement must be determined on a case-by-case basis.[1] Accordingly, we now consider whether Arizona's Constitution or statutes create a constitutionally protectible interest in commutation.

The Arizona Constitution, art. 5, § 5, gives the Governor "power to grant reprieves, commutations, and pardons, after convictions, for all offenses except treason in cases of impeachment, upon such condi-

tions and with such restrictions and limitations as may be provided by law." This constitutional provision is reiterated in A.R.S. § 31–443.[2]

■ The legislature has placed restrictions and limitations upon the Governor's exercise of the power of commutation in A.R.S. § 31–402, which provides:

A. The board of pardons and paroles shall have exclusive power to pass upon and recommend reprieves, commutations, paroles and pardons. No reprieve, commutation, parole or pardon may be granted by the governor unless it has first been recommended by the board.

B. All applications for reprieves, commutations, paroles and pardons made to the governor shall be at once transmitted to the chairman of the board, and the board shall return the applications with their recommendation to the governor.

Therefore, the Governor may not grant reprieves, commutations and pardons unless they are recommended by the Board of Pardons and Paroles. *McGee v. Arizona State Board of Pardons and Paroles,* 92 Ariz. 317, 376 P.2d 779 (1963).

In interpreting these constitutional and statutory provisions, the Arizona courts have held that commutation is a matter of grace, not of right. *See State ex rel. Arizona State Board of Pardons and Paroles v. Superior Court, supra.* Nevertheless, in a case involving an application for commutation of the death penalty, the Arizona Supreme Court held that the Board of Pardons and Paroles must provide a hearing stating, "[d]ue process of law requires notice and opportunity to be heard...." *McGee, supra* at 320, 376 P.2d at 781. The state would have us construe *McGee* narrowly to require due process protection in commutation hearings only where the death penalty is involved. However, in the later case of *State ex rel. Arizona State Board of Pardons and Paroles v. Superior Court, su-*

---

1. The Court based its decision upon the unique nature of the Nebraska statute which stated that the Board *shall* order release, unless in its opinion, the release should be deferred for specific statutory reasons.

2. A.R.S. § 31–443 provides:

The governor, subject to any limitations provided by law, may grant reprieves, commutations and pardons, after conviction, for all offenses, except impeachment, upon conditions, restrictions and limitations he deems proper.

*pra,* this court held due process applicable to all hearings on commutation.

■ Neither *McGee* nor *State ex rel. Arizona State Board of Pardons and Paroles v. Superior Court* discusses the rationale for according such protection. There is clearly no federal constitutional requirement that establishes a system for granting relief from a valid conviction and sentence previously imposed. *See Greenholtz, supra.* However, Arizona has chosen to provide commutation and implicitly a right to apply for such relief and has accorded due process protection to the consideration of such applications. The question therefore becomes what process is due in these circumstances.

Appellants and appellee agree that the Board of Pardons and Paroles does provide notice and hearing for all commutation hearings although they disagree with respect to whether the hearings are constitutionally required. However, appellants contend that due process requires, in addition, a statement of reasons for a denial of such applications.

■ Due process is a flexible concept and calls for such procedural protections as a particular situation demands. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Rosenberg v. Arizona Board of Regents,* 118 Ariz. 489, 578 P.2d 168 (1978); *McClanahan v. Cochise College,* 25 Ariz.App. 13, 540 P.2d 744 (1975). In *Foggy v. Eyman,* 110 Ariz. 185, 516 P.2d 321 (1973), our supreme court held that persons denied parole have no constitutional right to be told the reasons for such denial. As previously noted, commutation is even more a matter of grace than parole. *State ex rel. Arizona State Board of Pardons and Paroles, supra.* Consequently, we hold that due process does not require that applicants for commutation be provided with reasons for such denial.

Finally, we consider whether A.R.S. § 31–411(B) requires the Board of Pardons and Paroles to provide applicants for commutation with reasons for denial of their applications. A.R.S. § 31–411, which was enacted subsequent to the Arizona Supreme

Court's decision in *Foggy v. Eyman, supra,* provides in part:

A. The board of pardons and paroles shall meet at least monthly at the state prison and at other times or places deemed necessary. *At such meetings any prisoner who has been certified as eligible for parole or absolute discharge pursuant to the provisions of § 41–1604.06 or § 31–412, subsection B shall be given an opportunity to appear and apply for release upon parole or for an absolute discharge. . . .*

B. *When a prisoner appears before the board and his parole is denied,* the board shall within ten days prepare and deliver to the prisoner and director of the department of corrections a written statement specifying the specific individualized *reasons for the denial of parole or absolute discharge. . . .*

C. The board, when a commutation or parole is to be considered, shall, before taking action on the commutation or parole, notify the presiding judge of the superior court and the county attorney of the county in which the prisoner requesting a commutation or parole was sentenced. The notice to the presiding judge and the county attorney shall state the name of the prisoner requesting the commutation or parole and shall set the date of hearing on the application. No commutations or paroles shall be granted until thirty days after the date of giving the notice. (emphasis added)

It is clear on its face that subsection B does not expressly include denial of commutation. However, appellants argue that because commutation could result in an "absolute discharge," commutation was implicitly included within this term. We do not find this argument persuasive.

■ Subsection A of § 31–411 refers to applications for parole or absolute discharge by persons who are certified as eligible pursuant to the provisions of § 41–1604.06 or § 31–412.[3] Since an applicant for commutation is not required to meet the eligibility provisions of § 41–1604.06 or § 31–412, sub-

---

**3.** A.R.S. § 41–1604.06 provides a detailed scheme for classification of inmates for parole

eligibility. Included within the eligibility re-

section A of § 31–411 does not apply to such applicants.

Like subsection A, subsection B refers to "parole or absolute discharge" and appears to connect "absolute discharge" with parole eligibility rather than a request for commutation. Not only is there similarity in use of the phrase "parole or absolute discharge" in subsections A and B but the introductory clause of subsection B narrows its applicability. The Board is required to prepare and deliver reasons for denial of parole or absolute discharge only "[w]hen a prisoner appears before the board and his *parole* is denied, ..." (emphasis added). Appellants have not identified and we do not discern any objective evidence that "absolute discharge" as used in subsection B refers to absolute discharge other than in the context of application for parole.[4]

In contrast to subsections A and B, subsection C of A.R.S. § 31–411 makes spe-cific reference to commutation. Where the legislature has specifically used a term in certain places within a statute and excluded it in another place, courts will not read that term into the excluded section. *See Dunlop v. First National Bank of Arizona*, 399 F.Supp. 855 (D.C.Ariz. 1975). We therefore conclude that § 31–411(B) is not applicable to denials of commutation.

Judgment affirmed.

CONTRERAS, P. J., and RAPP, J., concur.

*NOTE*: The Honorable Edward C. Rapp was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 3.

quirements are that a prisoner has served at least one-half or in certain cases two-thirds of his sentence as a prerequisite for parole eligibility. Neither these time requirements or other requirements contained within § 41–1604.06 are prerequisites for eligibility for commutation. Apparently the only requirement for eligibility for commutation is that the applicant has served two years from his sentence begin date and is not within one year of his parole eligibility or mandatory release date. See A.C. R.R. R5–4–602.C.3.

A.R.S. § 31–412 provides in pertinent part:
A. If a prisoner is certified as eligible for parole pursuant to the provisions of § 41–1604.06 the board of pardons and paroles shall authorize the release of the applicant upon parole if the applicant has reached his earliest parole eligibility date pursuant to § 41–1604.06, subsection D, unless it appears to the board, in their sole discretion, that there is a substantial probability that the applicant will not remain at liberty without violating the law.

4. The phrase "absolute discharge" is the subject of A.R.S. § 31–414 which like A.R.S. § 31–411 is part of Title 31, Art. 2, Paroles. A.R.S. § 31–414, like § 31–411(A), describes absolute discharge in terms of parole eligibility. A.R.S. § 31–414 states:
If, upon certification by the director of eligibility for parole pursuant to § 41–1604.06, it appears to the board of pardons and paroles that there is reasonable probability that a prisoner on parole will live and remain at liberty without violating the law, and that his absolute discharge from imprisonment is not incompatible with the welfare of society, then the director of the department of corrections shall issue to the prisoner an absolute discharge from imprisonment which shall be effective to discharge the prisoner from the sentence imposed.