805 P.2d 388

James ARNOLD, Kenneth M. Clayton, David O. Williams, and Derrell Doyal, Plaintiffs/Appellants,

v.

ARIZONA BOARD OF PARDONS AND PAROLES, Patricia Veliz Gilbert; Ray R. Florez; Ron Johnson; Darwin H. Aycock; Arter L. Johnson; Richard M. Ortiz; Frank R. Startzell, Defendants/Appellees.

No. 2 CA–CV 90–0009.

Court of Appeals of Arizona, Division 2, Department B.

July 10, 1990.

Review Denied Feb. 20, 1991.

---

Stompoly & Stroud, P.C. by Don Awerkamp, Tucson, for plaintiffs/appellants.

Robert K. Corbin, Atty. Gen. by Bruce L. Skolnik, Tucson, for defendants/appellees.

## OPINION

FERNANDEZ, Chief Judge.

Appellants challenge two trial court rulings on appeal: its ruling that a Board of Pardons and Paroles regulation does not violate the ex post facto clause of either the state or federal constitution, and its denial of attorney's fees to appellants. We find no error and affirm.

Appellants James Arnold, Kenneth Clayton, David Williams, and Derrell Doyal are inmates of the Arizona State Prison Complex in Tucson. All are serving life sentences for murder. Williams committed his crime in 1969, Clayton and Doyal committed theirs in 1970, and Arnold committed his in 1975. Williams, Clayton, and Doyal have previously applied for and been de-

nied commutation of their sentences. In 1988, all four applied for commutation of their sentences. All were notified that Phase I[1] hearings would be held September 2, 1988. On August 29, they discovered that the hearings had been changed to September 1. None was ever officially notified of the change. All were subsequently informed that the board had determined not to hold a Phase II hearing on their applications.

In October 1988, appellants filed this action, combining a special action to compel the board to rehear their applications because of the lack of due process with a complaint for declaratory relief seeking a judgment that the administrative regulation governing commutation applications is unenforceable. The parties settled the special action issue when the state agreed to afford appellants another hearing.[2] They agreed that the issue of attorney's fees would be determined by the trial court. Appellants then moved for summary judgment on the ex post facto issue, arguing that the prohibition against their reapplying for commutation until 24 months after the denial of their previous applications violates the ex post facto clause. They appeal from the trial court's ruling that the regulation does not violate the ex post facto clause.

## EX POST FACTO VIOLATION

■ The governor has the power to commute prisoners' sentences in accordance with conditions, restrictions, and limitations provided by law. Ariz. Const. art. 5, § 5; A.R.S. § 31–443. The Board of Pardons and Paroles is granted exclusive power to recommend commutations, and the governor may not commute a sentence without the board's recommendation. A.R.S. § 31–402. Subject to that restriction, however, the governor has the sole power to determine whether to commute a prisoner's sentence. *State ex rel. Arizona State Board of Pardons & Paroles v. Superior Court,* 12 Ariz.App. 77, 467 P.2d 917 (1970).

■ At the time Clayton, Williams, and Doyal committed their crimes, the board regulation permitted a prisoner to reapply six months after his application was denied if he had not previously served time in a juvenile or adult penal institution and a year after denial if he had previously served time. At the time Arnold committed his crime in 1975, all prisoners were required to wait 12 months to reapply. In 1980, the current regulation was adopted. Prisoners are now required to wait 24 months after a denial to reapply for commutation. A.C.R.R. R5–4–602.

Appellants contend that the application of the current regulation to them instead of the regulation in existence when they committed their crimes is an ex post facto violation. Because there are no cases directly on point, appellants argue that the holding in *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) supports them. In that case, the Court held that an adverse change in a Florida statute governing prisoners' earning of good time credits could not be applied to prisoners whose crimes were committed before the change. As the Court explained in that case,

> The *ex post facto* prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.' ... Through this prohibition, the Framers sought to assure that legislative Acts give fair warning of their effect and per-

---

1. The board regulation provides for a Phase I review by the board of the documents and information on the prisoner to determine if further investigation is warranted. Only if the board decides to proceed further is a Phase II comprehensive investigation undertaken. During the second phase, witnesses may appear before the board. A.C.R.R. Rule R5–4–602(D).

2. Although neither party has mentioned it on appeal, the record reflects that Arnold, Williams, and Clayton were granted Phase II hearings after the stipulated new hearing. In May 1989, the board recommended to the governor that Clayton's minimum sentence be reduced to 55½ years and that Williams's minimum sentence be reduced to 63 years. The maximum sentence for both was recommended to remain at life. Arnold's application was still pending in May 1989. Doyal's application was denied after his Phase I hearing.

158

mit individuals to rely on their meaning until explicitly changed.... The ban also restricts governmental power by restraining arbitrary and potentially vindictive legislation.

450 U.S. at 28–29, 101 S.Ct. at 964, 67 L.Ed.2d at 22–23, *quoting Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 325–26, 18 L.Ed. 356, 363–64 (1867).

■ For a law to be ex post facto, "it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver*, 450 U.S. at 29, 101 S.Ct. at 964, 67 L.Ed.2d at 23. Because the regulation adopted in 1980 is being applied to appellants, whose crimes were committed prior to 1980, it is retrospective. Appellants argue that the ex post facto clause applies to administrative regulations that are adopted pursuant to statute, in this case, A.R.S. § 31–401(F). The board does not dispute that fact, and neither do we.

We must next determine whether appellants are "disadvantaged" by the retroactive application of the regulation. In doing so, we first examine the nature of commutation. An application for commutation of a prisoner's sentence to a lesser term is "nothing more than an appeal for clemency." *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 465, 101 S.Ct. 2460, 2464–65, 69 L.Ed.2d 158, 165 (1981). "[T]he Arizona courts have held that commutation is a matter of grace, not of right." *Banks v. Arizona State Board of Pardons & Paroles*, 129 Ariz. 199, 201, 629 P.2d 1035, 1037 (App.1981). In both *Banks* and *Dumschat*, the courts held that a prisoner's right to commutation of his sentence is not a constitutionally protectible interest such that parole boards are required to state their reasons for denying commutation.

Appellants rely on two cases involving retrospective application of laws that increase the time limits when a prisoner may reapply for parole. One case they cite, *Watson v. Estelle*, 859 F.2d 105 (9th Cir. 1988), was later vacated, the court instead

determining that no retroactive application had occurred. *Watson v. Estelle*, 886 F.2d 1093 (9th Cir.1989). In the other, the court held that a legislative change increasing the time between parole hearings was an ex post facto violation because it effectively deprived that prisoner, whose sentence was a short one, of any meaningful opportunity for parole. *Rodriguez v. United States Parole Commission*, 594 F.2d 170 (7th Cir.1979).

Parole, however, is a different creature than commutation. The legislature has adopted criteria for the board to apply in determining whether to grant parole. A.R.S. § 31–412. A prisoner denied parole must be given a written statement specifying the reasons for the denial. A.R.S. § 31–411(F). For commutation, on the other hand, the prisoner must obtain a recommendation from the board, but the legislature has enumerated no criteria the board must apply in determining whether to recommend commutation. A.R.S. § 31–402(A). Likewise, the governor has sole power to act on any application recommended by the board however he or she sees fit. A.R.S. § 31–443. As Division One of this court noted in *Banks*, "[t]here is less basis for an Arizona prisoner to anticipate commutation than parole, given that some limited expectancy of parole may be created by the statutory and regulatory scheme establishing parole eligibility." 129 Ariz. at 201, 629 P.2d at 1037.

The distinction between parole and commutation is even more significant within the context of ex post facto principles. As our earlier quote from *Weaver* indicates, the ex post facto clause applies to legislative acts. Although the regulation of which appellants complain was adopted by the board pursuant to the direction of the legislature, we cannot ignore the fact that the act of granting commutation is strictly a matter of executive grace. Therefore, changes in the procedure by which that grace is sought do not violate the ex post facto clause.

### DENIAL OF ATTORNEY'S FEES

■ Appellants next complain because the trial court rejected their request for attorney's fees incurred in their special action that sought a new hearing because of due process violations. They contend they are entitled to fees under one of three theories.

Their first two theories are statutory. They claim a right to fees under either A.R.S. § 12–2030 or § 12–348. Section 12–2030 provides for an award of fees to a party other than the state or any of its political subdivisions "which prevails by an adjudication on the merits" in a mandamus action. Likewise, § 12–348(A)(5) permits a fee award in a special action proceeding brought to challenge a state action "to any party other than this state or a city, town or county which prevails by an adjudication on the merits." Appellants argue that they are entitled to fees because they successfully obtained new hearings from the board. That argument, however, ignores the fact that the new hearings were the result of a settlement, not an adjudication on the merits.

Appellants contend that they were successful parties because they were able to obtain new hearings and that they are thus entitled to fees, analogizing to statutes such as A.R.S. § 12–341.01 and 42 U.S.C. § 1988. Section 12–341.01, however, requires that a party be "successful" in order to be awarded fees, and 42 U.S.C. § 1988 requires that the party be "the prevailing party." Appellants' attempt to impose the language of those statutes on the applicable statutes here would render the phrase "adjudication on the merits" meaningless.

The parties' stipulation on the special action states that appellants were granted new Phase I hearings and that "[t]his settlement disposes of all issues pertaining to the Phase I Commutation Hearings that are the subject of the instant lawsuit." The judgment entered in this case states, "THE COURT FINDS that the issue which sought the Court to order the administrative hearing has been rendered moot by the agreement." By no stretch of the imagina-

tion can it be said that an adjudication on the merits occurred on that issue.

Appellants' arguments that the denial of fees violates public policy because the state is not punished for having violated their due process rights and because indigent parties are thereby discouraged from seeking redress of their rights, are ones that must be addressed to the legislature. We cannot ignore the plain language of §§ 12–348 and 12–2030 which requires an adjudication on the merits for a fee award.

■ Nor do we find any merit to appellants' third theory for the recovery of fees, the private attorney general rule. That doctrine permits a fee award to "a party who has vindicated a right that: (1) benefits a large number of people; (2) requires private enforcement; and (3) is of societal importance." *Arnold v. Arizona Department of Health Services*, 160 Ariz. 593, 609, 775 P.2d 521, 537 (1989). It is obvious in this case that appellants' special action was brought on behalf of themselves solely to obtain a new hearing only for appellants.

Affirmed.

LIVERMORE, P.J., and LACAGNINA, J., concur.