274 P.3d 520

Barry HESS, Candidate; Judith Lewis, voter; Karen Johnson, voter; John D. Brakey, voter; Frank Henry, voter; Jack Scholnick, voter, Plaintiffs/Appellees,

v.

Helen PURCELL, Maricopa County Recorder; Maricopa County Board of Supervisors, a body politic; Fulton Brock; Don Stapley; Andrew Kunasek; Max W. Wilson; Mary Rose Wilcox, Defendants/Appellants.

No. 1 CA–CV 10–0911.

Court of Appeals of Arizona, Division 1, Department D.

March 22, 2012.

William G. Montgomery, Maricopa County Attorney by M. Colleen Connor, Deputy County Attorney, Phoenix, Attorneys for Defendants/Appellants.

Roach Law Firm L.L.C. by Brad Roach, Tucson, Attorney for Plaintiffs/Appellees.

## OPINION

PORTLEY, Judge.

¶ 1 Maricopa County ("County")[1] challenges the award of attorneys' fees and expenses awarded to Barry Hess and five voters (collectively, "Hess") for the partial success in their mandamus action. Because the trial court did not abuse its discretion, we affirm the judgment.

### FACTS AND PROCEDURAL BACKGROUND

¶ 2 In anticipation of the 2010 primary and general election, Barry Hess, a gubernatorial candidate, and five citizens filed a special action petition to compel the County to perform its statutory election duties. The petition, in relevant part, asserted that:

19. Defendants have not ordered nor intend to instruct their pollworkers to sign the polltapes (also known as "results tapes") that are printed by the precinct electronic voting machines, in violation of the state-standard procedures manual at page 144 under the subsection "keypad."
. . .

20. Defendants have ordered properly credentialed party observers in recent past elections not to observe the central tabulator systems, in violation of the state-standard procedures manual at page 105 the list of items the observers are specifically allowed to see by law. [sic] Plaintiffs allege defendants intent [sic] to continue this illegal practice. The procedures manual is established as binding under law at A.R.S. §§ [sic] 16–452 and this violation is defined as a class 2 misdemeanor.

. . . .

26. Respondents have chosen in previous elections and intend for this election to

---

1. "County" refers collectively to all Appellants.

produce reports of election totals that do not segregate the vote totals by type, particularly mail-in, precinct and provisional totals. This procedure violates the implicit right to observe the election process (both as political observers and public observers).... In addition, the mandate to provide totals of votes and ballots cast by precinct at A.R.S. §§ [sic] 16–646 predates the implementation of widespread mail-in voting; the mail-in votes are processed as a distinct type of precinct and a failure to report on those mail-in votes separately violates the goal of process transparency at 16–646. Respondents have chosen in previous elections and intend to continue in this election to select (for hand auditing) precincts, auditable mail-in vote batches and races *before* publishing complete unofficial vote totals, in violation of A.R.S. §§ [sic] 16–602 paragraph B1....

¶ 3 The petition also alleged that the County: (1) installed software on electronic systems to allow communication over Internet and cell communications networks in violation of the state procedures manual; (2) had used and intended to use uncertified software on the certified election management system; (3) prevented polling place observers from viewing or photographing poll tapes; (4) had ordered poll workers not to place poll tapes produced by electronic voting machines into the sealed official returns envelope; and (5) allowed one person to transport ballot material, in violation of the two-person requirement.

¶ 4 The issues were tried, and the trial court granted the petitioners partial mandamus relief on paragraphs 19, 20 and 26. Specifically, the court found "in favor" of Hess on the paragraph 19 claim because "the corrective action they were seeking has been accomplished." The court also ordered the County to "comply with the Arizona Election Procedure Manual and ensure that the observers have an unobstructed viewing area to [sic] the computer processing, including the ability to view the computer monitor," to

resolve the paragraph 20 claim. Finally, the court granted "the requested relief [on the paragraph 26 claim] pursuant to the agreement articulated by the parties on the record."

¶ 5 Hess then filed an application for attorneys' fees and expenses pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2030 (West 2012).[2] The County objected, but the trial court granted Hess a portion of the $44,198.98 requested fees and expenses because they had prevailed on "a small portion of their claim." We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. § 12–2101(A) (West 2012).

## DISCUSSION

### I.

¶ 6 We review the application of A.R.S. § 12–2030 de novo because it is a question of law. *John C. Lincoln Hosp. & Health Corp. v. Maricopa County*, 208 Ariz. 532, 545, ¶ 45, 96 P.3d 530, 543 (App.2004) (citing *Motel 6 Operating Ltd. P'ship v. City of Flagstaff*, 195 Ariz. 569, 572, ¶ 15, 991 P.2d 272, 275 (App.1999)). The statute provides that:

A. A court shall award fees and other expenses to any party other than this state or any political subdivision of this state which prevails by an adjudication on the merits in a civil action brought by the party against the state, any political subdivision of this state or an intervenor to compel a state officer or any officer of any political subdivision of this state to perform an act imposed by law as a duty on the officer.

B. As used in this section, "fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, report, test or project found by the court to be necessary for preparation

---

2. We cite the current version of an applicable statute if no revisions material to this decision have since occurred.

of the party's case, and reasonable and necessary attorney fees.

A.R.S. § 12–2030.

¶ 7 To qualify for fees, a party must show that it: "(1) prevailed on the merits (2) in a civil action (3) filed against the [s]tate or a political subdivision of the [s]tate (4) to compel a [s]tate officer or any officer of any political subdivision to perform a duty imposed by law." *Bilke v. State*, 221 Ariz. 60, 62, ¶ 7, 209 P.3d 1056, 1058 (App.2009) (citing A.R.S. § 12–2030(A)). If there is evidence to support the four elements, the trial court must award fees and expenses, but the amount of the award is left to the sound discretion of the court. *Exodyne Props., Inc. v. City of Phoenix*, 165 Ariz. 373, 380, 798 P.2d 1382, 1389 (App.1990).

¶ 8 Despite the partial award, the County contends that Hess only prevailed on a portion of their paragraph 20 claim. Hess, however, litigated the claim and relief was granted. Accordingly, Hess prevailed. *See S & R Props. v. Maricopa County*, 178 Ariz. 491, 502–03, 875 P.2d 150, 161–62 (App.1993) (citing *Exodyne Props.*, 165 Ariz. 373, 798 P.2d 1382) (plaintiff taxpayers were prevailing parties under § 12–2030 even though they did not prevail on their original relief request for refunds).

¶ 9 The County also contends that the ruling in favor of Hess on the paragraph 19 claim did not constitute an adjudication on the merits because the County had taken "corrective action." We disagree.

¶ 10 In *Tom Mulcaire Contracting, LLC v. City of Cottonwood*, we examined the prevailing party requirement and affirmed the attorneys' fee award even though the prevailing party did not obtain an order compelling performance of a duty or other affirmative relief. 227 Ariz. 533, 534, ¶ 1, 260 P.3d 1098, 1099 (App.2011). There, the unsuccessful contractor challenged Cottonwood's construction bid process and filed a mandamus action. *Id.* ¶ 2. The city subsequently terminated the contract awarded to the successful bidder, and decided to self-perform the work—steps

taken to attempt to moot the special action. *Id.* ¶¶ 3–4. After noting that A.R.S. § 12–2030 requires mandamus relief to prevail, we also found that our supreme court had stated that mandamus relief implicates equitable principles, including the maxim that "equity will not permit a wrong to be without a remedy." *Id.* at 537, ¶ 14, 260 P.3d at 1102. Consequently, we determined that, but for the city's actions, the contractor would have prevailed and equity would not allow the city to moot the contractor's claim and deprive it of fees. *Id.* ¶ 15 (citing *Loiselle v. Cosas Mgmt. Grp., LLC*, 224 Ariz. 207, 210, ¶ 8, 228 P.3d 943, 946 (App.2010); *Richardson v. City of Rutland*, 164 Vt. 422, 427, 671 A.2d 1245, 1249 (1995)).

¶ 11 Hess is the prevailing party. They had to seek special action relief to convince the County to comply with the reporting requirements, and successfully litigated their paragraph 20 claim on the merits. The absence of a mandamus order does not change the fact that, but for the special action, the County may not have altered its process. Although the County contends that it was already performing its statutory duties, the finding "in favor" of Hess and the reference to "corrective action" belies the assertion. And, the County has not pointed to any portion of the record that undermines the trial court's ruling.[3]

¶ 12 Citing *Arnold v. Arizona Board of Pardons and Paroles*, the County argues that fees and expenses cannot be awarded where the parties settled the dispute. 167 Ariz. 155, 805 P.2d 388 (App.1990). In Arnold, we held that appellants who had settled with the board and secured new hearings did not prevail in an adjudication on the merits and were not entitled to fees pursuant to § 12–2030. *Id.* at 159, 805 P.2d at 392.

¶ 13 Unlike *Arnold*, the trial court here specifically found "in favor" of Hess because "the corrective action they were seeking ha[d] been accomplished." The finding does not mention any agreement or settlement. Consequently, the trial court was not precluded from considering the resolution of the

---

3. The County failed to file a trial transcript. As a result, we assume that the record supports the trial court's characterization. *See Johnson v.* *Elson*, 192 Ariz. 486, 489, ¶ 11, 967 P.2d 1022, 1025 (App.1998) (citing *Baker v. Baker*, 183 Ariz. 70, 73, 900 P.2d 764, 767 (App.1995)).

paragraph 19 claim in determining to award fees and expenses.

¶ 14 The trial court, however, found that the paragraph 26 claim had been resolved "pursuant to the agreement articulated by the parties on the record." As a result, *Arnold* dictates that the resolution of the claim is not an adjudication on the merits. *See id.*

¶ 15 Hess contends, however, that the trial court could have considered the County's actions before the settlement when awarding fees and expenses. Hess had requested documents in electronic form, but the County demanded that they file a public records request and pay $2,500 to view the vote tally. As a result, Hess contends that they had to incur attorneys' fees and engage in unduly protracted litigation, and should not be deprived of fees only because of the eleventh-hour settlement.

¶ 16 Although there was protracted litigation, the settlement effectively mooted the paragraph 26 claim. Consequently, the settlement agreement precludes Hess's entitlement to fees for the paragraph 26 claim.

## II.

¶ 17 The County also challenges the calculation and award of fees. We review the amount of the fee award for an abuse of discretion. *S & R Props.*, 178 Ariz. at 504, 875 P.2d at 163 (citing *Gilbert v. Bd. of Med. Exam'rs of Ariz.*, 155 Ariz. 169, 185, 745 P.2d 617, 633 (App.1987)).

¶ 18 The County first argues that the "fee affidavits lacked the detail necessary for the trial court to properly allocate the fees attributable to the portion of one claim on which they prevailed." Because the County does not provide any example to support its argument, we will not address it. *See Polanco v. Indus. Comm'n of Ariz.*, 214 Ariz. 489, 491 n. 2, ¶ 6, 154 P.3d 391, 393 n. 2 (App. 2007) (citing ARCAP 13(a)(6); Ariz. R.P. Spec. Actions 10(k); *In re $26,980.00 U.S. Currency*, 199 Ariz. 291, 299, ¶ 28, 18 P.3d 85, 93 (App.2000)) (an undeveloped argument lacking record or legal support is waived).

¶ 19 The County next contends that the trial court should have reduced the award to "less than one-eighth of the requested amount." We disagree.

¶ 20 Once the four elements of § 12–2030(A) have been demonstrated, the trial court must award "reasonable and necessary attorney fees." A.R.S. § 12–2030(B). But, as we stated in *China Doll*, "there is no precise rule or formula for making these [fee] determinations" when a party does not succeed on all the issues. *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 189, 673 P.2d 927, 933 (App.1983) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)) (internal quotation marks omitted). Because "[m]uch of counsel's time will be devoted generally to the litigation as a whole, ... it [will be] difficult to divide the hours expended on a claim-by-claim basis." *Id.* (quoting *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933) (internal quotation marks omitted). Accordingly, the reasonableness assessment requires more analysis than a simple division of the fee request by the number of successful claims. *See S & R Props.*, 178 Ariz. at 506–07, 875 P.2d at 165–66 (reversing and remanding for a recalculation of reasonable fees because trial court arbitrarily reduced fees by either one-third or one-half).

¶ 21 The trial court recognized that Hess prevailed on a small portion of their claims, and awarded them only $6,300 in fees. The court was in the best position to make an allocation of appropriate fees. On this record, we find no abuse of discretion. *See China Doll*, 138 Ariz. at 189, 673 P.2d at 933 (explaining that appellate courts are unsuited to conduct fact-finding on attorneys' fees calculations).

## III.

¶ 22 The County also challenges the expenses of John Brakey and Jim March awarded to Hess. Specifically, the County argues that the expenses of Brakey and March do not qualify as § 12–2030(B) expenses because they are not experts, licensed investigators, or paralegals, and because the court never made a finding that any "study, analysis, report, test or project" was "necessary for preparation of the party's case" as

required by A.R.S. § 12–2030(B). We review the issue de novo because it involves statutory interpretation. *Sw. Airlines Co. v. Ariz. Dep't of Revenue,* 217 Ariz. 451, 452, ¶ 6, 175 P.3d 700, 701 (App.2008) (citing *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.,* 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994)).

¶ 23 Section 12–2030(B) expenses "include[ ] the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, report, test or project found by the court to be necessary for preparation of the party's case, and reasonable and necessary attorney fees." When interpreting a statute, our goal is to give effect to the legislature's intent. *Mail Boxes, etc., U.S.A. v. Indus. Comm'n of Ariz.,* 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995) (citing *State v. Korzep,* 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990)). The statute's language is the best indicator of intent. *Airport Props. v. Maricopa County,* 195 Ariz. 89, 99, ¶ 35, 985 P.2d 574, 584 (App.1999) (citing *Fain Land & Cattle Co. v. Hassell,* 163 Ariz. 587, 790 P.2d 242 (1990)). If the language is clear and unambiguous, we apply the language as written. *Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991) (citing *Balestrieri v. Hartford Accident & Indem. Ins. Co.,* 112 Ariz. 160, 163, 540 P.2d 126, 129 (1975); *Bd. of Accountancy v. Keebler,* 115 Ariz. 239, 240, 564 P.2d 928, 929 (App.1977)).

¶ 24 Subsection (B) does not expressly require that the "study, analysis, report, test or project" be prepared by an expert or attorney. Unlike the qualifying expenses which the statute expressly ties to attorneys and experts, the language referring to expenses that relate to a "study, analysis, report, test or project" does not specify that the material must be prepared by an attorney, expert or, as the County contends, by a licensed private investigator. We decline to add words to § 12–2030(B).[4]

¶ 25 Moreover, the "study, analysis, report, test or project" must be necessary to the party's case before the related expenses can be awarded. *Id.* Here, it is undisputed that Brakey and March prepared a report titled "Unlawful Actions of The Maricopa County Elections Office—A Partial Compendium of Sins," which became the basis for the special action petition. In addition, the affidavits reflect that Brakey and March conducted research that included observing and documenting voting practices, interviewing witnesses, examining poll tapes, researching materials on the conduct of prior elections, reviewing various counties' precinct procedures, and identifying and documenting wireless network procedures at election headquarters. Thus, they were clearly engaged in a study and analysis which resulted in a report that led to the special action.

¶ 26 Although the court did not make any specific findings that the services of the two men were necessary to the case, § 12–2030 does not require the court to make express findings. Moreover, although the County did not request findings, it admits on appeal that Brakey and March's work became the basis for the special action. Accordingly, "we must presume that the trial court found every fact necessary to support its judgment," including the necessity of the work, and "will affirm if any reasonable construction of the evidence justifies it." *Double AA Builders, Ltd. v. Grand State Constr. LLC,* 210 Ariz. 503, 506, ¶ 9, 114 P.3d 835, 838 (App.2005) (citing *Garden Lakes Cmty. Ass'n, Inc. v. Madigan,* 204 Ariz. 238, 240, ¶ 9, 62 P.3d 983, 985 (App. 2003); *In re CVR 1997 Irrevocable Trust,* 202 Ariz. 174, 177, ¶ 16, 42 P.3d 605, 608 (App. 2002)).

¶ 27 Finally, we review whether the trial court abused its discretion in the amount of expenses awarded. *See Exodyne Props.,* 165 Ariz. at 380, 798 P.2d at 1389.

4. Although the County contends that the award for expenses incurred by Brakey and March violates public policy, we find no statutory support for the argument. Instead, the broad language in § 12–2030 demonstrates the public policy of compensating litigants for expenses incurred in compelling public officials to comply with the law.

The County also argues that the award is inconsistent with *Landi v. Arkules,* 172 Ariz. 126, 835 P.2d 458 (App.1992). In *Landi,* we held that a private contract with an investigator who was unlicensed in Arizona violated A.R.S. § 32–2410 (now A.R.S. § 32–2411) because a license was required to conduct an heir-finding investigation. 172 Ariz. at 135, 835 P.2d at 467. The *Landi* issue does not exist in this case.

Although the two men did not maintain records that comport with the China Doll standard, we have not imposed the standard on expert witnesses and need not impose the standard here. *See Cyprus Bagdad Copper Corp. v. Ariz. Dep't of Revenue,* 196 Ariz. 5, 9–10, ¶¶ 16–26, 992 P.2d 5, 9–10 (App.1999) (rejecting the argument that an expert's records were not sufficiently specific to support a $106, 000 fee under A.R.S. § 12–348(D)).

¶ 28 The County also complains that expenses for fundraising, for producing a video, and for food, gas, lodging and other goods and services were inappropriate. The court, however, awarded less than half of the $31,601 investigative fees requested, and those reductions exceeded the challenged amounts. On this record, we cannot conclude that the court abused its discretion in awarding $14,000 for the work.

¶ 29 Hess also requests attorneys' fees on appeal pursuant to A.R.S. § 12–2030. We grant them reasonable attorneys' fees in an amount to be determined upon timely compliance with Arizona Rule of Civil Appellate Procedure 21(c).

### CONCLUSION

¶ 30 Based on the foregoing, we affirm the fees and expenses awarded to Hess.

CONCURRING: JON W. THOMPSON, Presiding Judge and JOHN C. GEMMILL, Judge.