NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

HAZ-MAT RESPONSE
TECHNOLOGIES, INC., *Plaintiff/Appellant*,

*v.*

OXNARD COMMERCEPLEX,
LLC, et al., *Defendants/Appellees*.

No. 1 CA-CV 22-0626
FILED 6-27-2023

Appeal from the Superior Court in Maricopa County
No. CV2018-013876
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

COUNSEL

McGill Law Firm, Scottsdale
By Gregory G. McGill
*Counsel for Plaintiff/Appellant*

Gilbert Bird Law Firm, PC, Scottsdale
By Ryan J. Bird
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

---

Vice Chief Judge David B. Gass delivered the decision of the court, in which Judge Brian Y. Furuya and Judge Andrew M. Jacobs joined.

---

**G A S S**, Vice Chief Judge:

**¶1**          Tenant, Haz-Mat Response Technologies, Inc. (Haz-Mat) appeals several jury verdicts in favor of landlord companies Oxnard Commerceplex, LLC, and AZEJM Land Holdings LLC (collectively, the landlord). The controversy arises because a leaking water heater damaged the suite Haz-Mat rented, Haz-Mat later did not pay amounts due, and the landlord ultimately locked out Hazmat. Haz-Mat argues: (1) the jury failed to follow the superior court's instructions about: (a) the interpretation of "concealed" in the lease, and (b) waiver of strict performance; and (2) the superior court erred by not giving the jury an adverse inference instruction for the landlord's removal and disposal of the water heater. We affirm.

**FACTUAL AND PROCEDURAL HISTORY**

**I.      The Lease**

**¶2**          In 2014, Haz-Mat and the landlord entered into a 26-month commercial lease and later extended its terms into 2019. The landlord drafted the lease and Haz-Mat's president reviewed and agreed to its terms. Relevant here, the lease specified the landlord would be responsible for the maintenance and repair of any plumbing systems and facilities "concealed or used in common by tenants." In an emergency, the lease allowed the landlord to make repairs and required Haz-Mat reimburse the landlord for such repairs.

**¶3**          The lease required any waivers to "be in writing and signed by the waiving party." The lease also said, "Landlord's failure to enforce any provision of this Lease or its acceptance of rent shall not be a waiver and shall not prevent Landlord from enforcing that provision or any other provision of this Lease in the future."

**¶4**          The lease also specified Haz-Mat would be in "material default" if it "fail[ed] to pay rent or any other charge when due." In the event of Haz-Mat's material default, the lease permitted the landlord to "at any time thereafter, with or without notice . . . repossess the Property by

2

forcible entry . . . or otherwise, without demand or notice of any kind to [Haz-Mat]."

¶5　　　　The lease also required any notices "be in writing and personally delivered or sent by certified mail[,]" but it listed the wrong mailing address for Haz-Mat. The parties later disputed whether the landlord or Haz-Mat was at fault for listing the wrong address.

## II.　　The Leak

¶6　　　　In March 2018, Haz-Mat's president entered the suite and found the suite flooded. The suite included a front office space with a drop-ceiling and a warehouse space at the back of the suite. Haz-Mat's president did not see any source of the leak in the office space, so he walked into the warehouse space where he could hear water in the ceiling and wall. Using a ladder, he could see the water coming from the water heater and pipes above the drop ceiling but could not stop the leak.

¶7　　　　Then Haz-Mat contacted the landlord who sent its maintenance technician to the suite. The technician stopped the leak by bypassing the water heater. The landlord hired and paid contractors to remove the water and fix the damage. Haz-Mat did not have any water for several weeks and had no hot water from then on.

## III.　　The Lockout

¶8　　　　In June 2018, Haz-Mat's president received an email with an invoice for, among other things, a $1,665 charge for "emergency water extraction." That email, in part, prompted a June 28, 2018 teleconference between Haz-Mat and the landlord.

¶9　　　　Following the teleconference, Haz-Mat paid the July 2018 rent and other outstanding fees. The parties dispute the purpose of that payment. Haz-Mat believes it was in settlement of all outstanding amounts due. But the landlord disagrees and claims Haz-Mat had other outstanding amounts due at the time.

¶10　　　　Those outstanding amounts began accruing before the leak occurred. Five months before the leak, the landlord began raising issues by sending several default letters via certified mail for which it received signed delivery receipts. Haz-Mat disputes receiving the letters because the landlord mailed them to the address in the lease, which was the wrong address. The landlord sent the last default letter in September 2018. That letter said Haz-Mat owed more than $8,000 and, unless Haz-Mat paid the

3

full amount within three days, the landlord could "exercise any or all remedies available pursuant to the lease agreement and/or applicable Arizona law."

¶11 About two weeks later, the landlord locked Haz-Mat out of the suite. In October 2018, Haz-Mat paid the landlord more than $10,000, believing that payment would end the lockout. But the landlord did not let Haz-Mat back into the suite and terminated the lease in November 2018.

## IV. The Litigation

¶12 In November 2018, Haz-Mat filed suit for several claims, including: declaratory relief, breach of the lease and implied duty of good faith and fair dealing, wrongful eviction, negligent misrepresentation, and tortious interference with business expectancy. The landlord counterclaimed for breach of contract and breach of implied covenant of good faith and fair dealing.

¶13 About a month after litigation began, Haz-Mat entered the suite and removed its equipment. About ten months later, the landlord removed and discarded the water heater before the next tenant moved in. The parties' disclosure statements are not in the record. During oral argument, landlord's counsel avowed landlord and Haz-Mat did not disclose the water heater as evidence they anticipated using at trial. Haz-Mat's counsel did not dispute that avowal.

¶14 In November 2020, Haz-Mat moved for partial summary judgment and a spoliation instruction for the landlord's removal and disposal of the water heater. After oral argument, the superior court denied Haz-Mat's motion, finding triable issues of fact prevented entry of summary judgment. As to its requested spoliation instruction, the superior court found Haz-Mat failed to raise the issue until two years into the lawsuit, did not show prejudice, and the landlord removed the water heater "as part of the normal course of action when reletting the premises."

¶15 After trial, the jury found for the landlord on all claims except for the landlord's claim against Haz-Mat for breach of the implied duty of good faith and fair dealing. This court has jurisdiction over Haz-Mat's timely appeal under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1 and -2101.A.1.

## ANALYSIS

**I.** **Nothing in the record shows the jury failed to follow the superior court's instructions.**

**¶16** Haz-Mat argues the jury failed to follow the superior court's instructions about contract ambiguities and the landlord's waiver of Haz-Mat's strict performance.

**¶17** This court views the facts in the light most favorable to sustaining the verdict and affirms "if any substantial evidence could lead reasonable persons to find the ultimate facts sufficient to support the verdict." *Higgins v. Assmann Electronics, Inc.*, 217 Ariz. 289, 296 ¶ 26 (App. 2007) (citation omitted). "Substantial evidence is any relevant evidence from which a reasonable mind might draw a conclusion." *Mealey v. Arndt*, 206 Ariz. 218, 221 ¶ 12 (App. 2003) (cleaned up). And this court presumes jurors follow the superior court's instructions. *Cal X-Tra v. W.V.S.V. Holdings, L.L.C.*, 229 Ariz. 377, 405 ¶ 92 (App. 2012).

**A.** **Substantial evidence permitted a reasonable jury to find the water heater was not "concealed."**

**¶18** First, Haz-Mat argues because the lease did not define "concealed," the phrase was ambiguous, and the jury should have construed it against the drafter-landlord.

**¶19** This court's "purpose in interpreting a contract is to determine and give effect to the parties' intent." *Tucson Ests. Prop. Owners Ass'n v. Jenkins*, 247 Ariz. 475, 478 ¶ 9 (App. 2019) (citation omitted). This court first looks to the language of the contract itself. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593 ¶ 9 (App. 2009). If the language of a contract is unambiguous, courts interpret the contract as written. *Id.* The superior court should submit contract interpretation to a jury if the language is ambiguous, meaning "susceptible to more than one interpretation." *State v. Mabery Ranch, Co., LLC.*, 216 Ariz. 233, 241 ¶ 28 (App. 2007). This preliminary ambiguity determination is a question of law for the court. *Id.*

**¶20** Here, the superior court presumably concluded "concealed" was susceptible to more than one meaning and allowed the parties to introduce evidence and argument supporting different interpretations to the jury. Haz-Mat argued the lease's use of "concealed" required the landlord to maintain and repair any pipes if they were difficult to see or were not in plain view when observed from the suite's floor. The landlord

argued the lease's use of "concealed" required the landlord to maintain and repair pipes only if they were enclosed and inaccessible to Haz-Mat. Both Haz-Mat and the landlord presented evidence to support of their positions.

¶21    Neither Haz-Mat nor the landlord objected to the final jury instruction on the matter. The court instructed the jury as follows:

> You may find that, even after you have determined and considered the surrounding facts and circumstances, what the parties intended a particular written provision to mean is still not clear to you. If, and only if, you have determined and considered the facts and circumstances surrounding the formation of the contract and still cannot determine which of the possible, reasonable meanings was intended by the parties, you should apply the following rule of law: In choosing between the possible meanings of language in a written agreement, the meaning that operates against the interests of the party who supplied the words is generally the preferred meaning.

¶22    Haz-Mat argues the jury should have found the landlord responsible for the leak because the lease required the landlord to maintain and repair plumbing systems and facilities "concealed or used in common by tenants." Specifically, Haz-Mat contends the jury should have adopted its definition of "concealed" and interpreted the term against the drafter-landlord simply because the term is ambiguous. But this is not the law.

¶23    The jury instructions appropriately summarized the proper legal principles. The jury must examine the parties' evidence to discern the parties' intentions considering the lease's language and all the surrounding circumstances. *See MT Builders, L.L.C. v. Fisher Roofing, Inc.*, 219 Ariz. 297, 302 ¶ 10 (App. 2008). If the jury finds a contract is still unclear after considering the parties' intent, then it must construe the provision against the drafter. *See Skydive Ariz., Inc. v. Hogue*, 238 Ariz. 357, 367 ¶ 40 (App. 2015). But the jury only reaches the secondary rule if "other interpretive guides fail to elucidate" the provision's meaning. *See Town of Marana v. Pima Cnty.*, 230 Ariz. 142, 147 ¶ 22 (App. 2012).

¶24    Nothing in the record suggests the jury did not follow the court's instruction in determining the parties' intent. The jury did not indicate, after considering the evidence and surrounding circumstances, it could not determine the parties' intent about the meaning and effect of the term "concealed." Instead, after weighing all the evidence, it found in favor

of the landlord, implicitly adopting the landlord's proposed meaning of "concealed." Nothing about the verdict conflicts with the court's instruction. And this court does not reweigh the evidence. *Williams v. King*, 248 Ariz. 311, 317 ¶ 26 (App. 2020).

¶25        Second, Haz-Mat argues "none of the trial testimony or photos showed that the cause of the leak was visible to, or readily accessible by, the tenant hence it was concealed." But applying the landlord's meaning, the jury needed only consider whether, under the lease, the plumbing systems and facilities were enclosed and inaccessible — not "visible or readily accessible."

¶26        Substantial evidence supported the verdict because a reasonable juror could conclude the relevant plumbing and facilities were not "concealed." Though Haz-Mat's president testified he needed a ladder to access the water heater and pipes, he also admitted he could see the top of the water heater from the floor. The landlord's maintenance technician testified he did not have to cut drywall or remove anything to access the water heater. Haz-Mat's president also testified he could not see a second leak from the floor, but the landlord's maintenance technician said the second leak was only a drip and the first leak was "spray[ing]" and "spewing" from the pipe at the top of the water heater. He also testified the leak stopped once he disconnected the water heater from the water source.

¶27        Further, both parties presented photos of the leak and water heater location and the already-existing hole cut into the wall to access it. The landlord's maintenance technician also pointed to the leaks in the photos. The jury, thus, heard substantial evidence supporting the conclusion the water heater and leaks were not "concealed." And though Haz-Mat presented conflicting evidence, this court will not reweigh evidence or reassess credibility issues on appeal. *Williams*, 248 Ariz. at 317 ¶ 26; *see also Flanders v. Maricopa Cnty.*, 203 Ariz. 368, 371 ¶ 5 (App. 2002) (stating this court will not set aside a jury verdict just because the jury could have drawn different inferences or conclusions).

¶28        As a final point, Haz-Mat used one paragraph of its opening brief to reference the duty of good faith and fair dealing. In that single paragraph, Haz-Mat argues the jury should have found the landlord deprived Haz-Mat of its reasonable expectations under the lease because "no reasonable tenant" under the same facts would have expected to be responsible for the leak. Haz-Mat cites no authority to support its argument about the expectations of a "reasonable tenant." And Haz-Mat does not even mention the duty in its reply brief. Haz-Mat, thus, waived this

argument on appeal.[1] *See Hess v. Purcell*, 229 Ariz. 250, 254 ¶ 18 (App. 2012) (parties waive undeveloped arguments lacking legal support).

**B.    Because substantial evidence permitted a reasonable jury to find the landlord did not waive its strict performance expectations, the landlord did not need to provide notice to Haz-Mat.**

¶29    Haz-Mat also argues the jury should have found the 2018 lockout improper because the landlord waived the lease's strict performance requirement through its actions and then failed to provide notice.

¶30    Waiver is a question of fact for the jury to decide. *Jones v. Cochise Cnty.*, 218 Ariz. 372, 380 ¶ 28 (App. 2008). A jury may infer waiver through conduct. *See id.* at 379 ¶ 22. But such conduct "must be established by evidence of acts inconsistent with an intent to assert the right." *Id.* at 379 ¶ 23. And, despite a non-waiver provision requiring all waivers be in writing and signed by the waiving party, a party may waive its expectation of strict performance through conduct. *See Chadwick v. Winn*, 101 Ariz. 533, 536 (1966).

¶31    As to waiver, the superior court instructed the jury:

When a party has waived strict performance of the provisions of the contract as to when payments must be made, the party cannot declare a breach or forfeiture until the opposing party is notified of the party's intention to insist upon strict performance and given a reasonable opportunity to bring payments to date.

¶32    Haz-Mat contends the jury had to find the landlord waived Haz-Mat's strict performance and failed to provide notice. Haz-Mat relies on its payment history, the landlord's billing practices, testimony from the landlord's chief operating officer to argue the landlord waived its expectation of strict performance as a matter of law. Haz-Mat points out the landlord's chief operating officer testified Haz-Mat had a pattern of delinquent payments, Haz-Mat would eventually pay late, and he would

---

[1]    This court notes the landlord's failure to comment on Haz-Mat's good faith and fair dealing paragraph but does not treat it as a confession of error. *See McDowell Mountain Ranch Cmty. Ass'n, Inc. v. Simons*, 216 Ariz. 266, 269 ¶ 13 (App. 2007) (explaining this court has discretion whether to find the failure to address an argument as a confession of error).

not authorize lockouts when a tenant "substantially" paid. But Haz-Mat itself presented conflicting testimony. The assistant to Haz-Mat's president testified HazMat never paid rent late. And Haz-Mat presented no evidence showing it ever challenged any charges before those leading to the June 2018 teleconference.

¶33    The landlord argues it could not have waived its expectation because the lease required all waivers to be in writing. And regardless, it sent default letters, locked Haz-Mat out previously, and never agreed to any settlement for Haz-Mat's payment of the fees associated with the leak. The jury saw evidence and heard testimony supporting the landlord's arguments.

¶34    The jury saw evidence showing the landlord had sent default letters before the March 2018 leak and had re-keyed Haz-Mat's suite twice in 2017. In his testimony, Haz-Mat's president acknowledged the landlord changed the locks once in 2017 and prevented entry until Haz-Mat paid its outstanding balance—but he did not characterize the event as a "lockout." During oral argument before this court, however, Haz-Mat's counsel conceded the event was a lockout.

¶35    A reasonable jury could have found the landlord did not waive its expectation of strict performance because it sent default letters and had locked out Haz-Mat in the past. Further, Haz-Mat never requested the landlord authorize late payments. Substantial evidence, thus, supported the jury's finding the landlord did not waive its expectation of strict performance. On this record, we cannot set aside the jury's verdicts. *See Williams*, 248 Ariz. at 317 ¶ 26; *Flanders*, 203 Ariz. at 371 ¶ 5.

## II.    The superior court did not err by declining to provide an adverse inference instruction for the landlord's removal and disposal of the water heater.

¶36    Haz-Mat argues the superior court abused its discretion by refusing to provide an adverse inference instruction to the jury for the landlord's removal and disposal of the water heater.

¶37    Spoliation is the intentional or bad-faith destruction of evidence. *See Smyser v. City of Peoria*, 215 Ariz. 428, 440 ¶ 37 (App. 2007). A party must preserve evidence it "know[s], or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *McMurtry v. Weatherford Hotel, Inc.*, 231 Ariz. 244, 260 ¶ 51 (App. 2013) (citation omitted).

¶38            The superior court may impose sanctions, including an adverse inference instruction, when it finds a party breached its duty to preserve relevant evidence. *Id.* The superior court should consider the destruction of evidence on a case-by-case basis, applying a "continuum of fault" with appropriate penalties. *Smyser*, 215 Ariz. at 439 ¶ 36. Typically, unless there is evidence of bad faith and no other means can establish the facts the evidence may have shown, the superior court will not impose an adverse inference instruction. *See id.* at 439–40 ¶¶ 36–38. Spoliation does not prejudice a party "in any meaningful way" if the party had the chance to inspect the evidence and present credibility issues to the jury. *See Strawberry Water Co. v. Paulsen*, 220 Ariz. 401, 411 ¶ 30 (App. 2008).

¶39            The superior court has a great deal of discretion in deciding how to instruct the jury. *See State v. Almeida*, 238 Ariz. 77, 80 ¶ 9 (App. 2015) (explaining an instruction is appropriate when even the "slightest evidence" supports it). For a spoliation instruction, the superior court may consider whether: (1) the offending party willfully and knowingly destroyed or allowed someone else to destroy the evidence; (2) the offending party disregarded a court order or procedural requirements; (3) the non-offending party had the "right, opportunity, and ability to retrieve and preserve the [evidence] if it so chose"; and (4) evidence shows the destruction of evidence eliminated or irreparably prejudiced the non-offending party's ability to present its case. *Souza v. Fred Carries Conts., Inc.*, 191 Ariz. 247, 250–51 (App. 1997).

¶40            The superior court found the landlord did not remove and dispose of the water heater intentionally or in bad faith. The superior court found the landlord removed the water heater "as part of the routine cleanup and preparation for a new tenant." And though Haz-Mat claims it requested the landlord not replace the water heater, the superior court found its purpose was to address the leak, not future litigation, because the request occurred around the time of the leak. As the superior court noted, Haz-Mat did not request the landlord keep "the 3/4-inch water line, valves, piping" or any other components Haz-Mat claimed probative of the causation issue.

¶41            The superior court also found Haz-Mat failed to show prejudice. The record supports this finding. Haz-Mat had access to the water heater for more than six months between the leak and the lockout. And the landlord did not remove and dispose of the water heater until one year after Haz-Mat sued. Additionally, both parties presented other evidence, such as photographs and testimony from direct observers. *See supra* ¶¶ 26–27. Lastly, Haz-Mat got the chance to present its spoliation

argument to the jury during trial, though it did not. On this record, the superior court did not err by not providing an adverse inference instruction to the jury.

## ATTORNEY FEES AND COSTS

**¶42** Haz-Mat requests attorney fees under ARCAP 21(a), A.R.S. § 12-341.01.A, and *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 571 (1985) ("considering the nature of the action and the relative economic positions of the parties" when awarding attorney fees). The landlord also requests attorney fees and costs under ARCAP 21(a) and section 12.01 of the lease. Section 12.01 of the lease says: "if any action for breach of or to enforce the provisions of this Lease is commenced, the court in such action shall award to the party in whose favor a judgment is entered, a reasonable sum as attorneys' fees and costs." As the prevailing party in an action for breach, we award the landlord its reasonable attorney fees and costs under Section 12.01 of the lease upon compliance with ARCAP 21.

## CONCLUSION

**¶43** We affirm.

