296 P.3d 94

John PRUTCH, a resident and qualified elector of the Town of Quartzsite, Arizona, Petitioner/Appellant,

v.

TOWN OF QUARTZSITE, an Arizona municipal corporation; Quartzsite Town Council, in their official capacity as election official for the Town of Quartzsite; Terry Frausto, in her official capacity as Town Clerk for the Town of Quartzsite, Respondents/Appellees,

and

Mike Jewitt, purported candidate elect to the Town of Quartzsite Town Council, Real Party in Interest/Appellee.

No. 1 CA–CV 12–0290.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 26, 2013.

As Amended Feb. 26, 2013.

Ellen M. Van Riper, Phoenix, Attorney for Petitioner/Appellant.

Sims Murray Ltd. By Jeffrey T. Murray, Phoenix, Attorneys for Respondents/Appellees.

HOWE, Judge.

¶1 John Prutch appeals the dismissal of his complaint against the Town of Quartzsite, its Town Council and Town Clerk, and Mike Jewitt (collectively, "Quartzsite"), challenging Jewitt's election to the Town Council. We hold that the trial court erred as a matter of law in dismissing the complaint based on the defense of laches. That defense requires a trial court to find not only that a plaintiff caused prejudicial delay, but also that the plaintiff acted unreasonably in causing the delay. The trial court erred in applying laches because although it found that Prutch caused prejudicial delay in pursuing his complaint, it expressly declined to find that he acted unreasonably. We reject Prutch's other claims of error.

## FACTS AND PROCEDURAL HISTORY

¶2 In 2011, Jose Lizarraga vacated his seat on the Quartzsite Town Council to run for mayor in a recall election. The Town Council appointed Jewitt to fill the vacancy until the next regularly scheduled council election, and scheduled a primary election for March 13, 2012. However, the Town issued a press release in January 2012 referring to the scheduled primary as a special election. Prutch ran against Jewitt as a write-in candidate. At the election, neither candidate received a majority of the 657 votes cast, but Jewitt received more votes (263) than Prutch received (230).

¶3 On March 30, 2012, the Town Council accepted the canvass of the votes and adopted Resolution Number 12–08 ("the Resolution"), which declared Jewitt the winner for the remaining two-year term.[1] The Res-

---

1. Section 10 of Resolution Number 12–08 reads as follows:

 A.R.S. § 9–235 stating that an appointment [of a] vacant council seat shall extend only until the next regularly scheduled council election unless the vacancy occurs on or after the thirtieth day before the nomination deadline for the next regularly scheduled council election; Mayor Lizarraga having vacated his Council seat before the thirtieth day before the nomination deadline for the next regularly scheduled council election, i.e., the March 13, 2012

 election; any interpretation of A.R.S. § 9–235 other than that the seat be filled by the person obtaining the most votes at the next regularly scheduled council election would lead to the absurd conclusion that the legislature intended for cities and towns to be without a Council Member and, potentially a government, for eleven to thirteen weeks; and Mike Jewitt having received more votes than any other candidate vying to fill the remainder of Mayor Lizarraga's former Council seat: Mike Jewitt is declared elected to fill the remainder of Mayor

olution asserted that waiting to fill the seat at the general election would leave Quartzsite "without a Council Member and[ ] potentially a government" for eleven to thirteen weeks. The Town Council ordered that Jewitt be issued a certificate of election and sworn in as "soon as practicable." The Town Clerk issued the certificate and swore in Jewitt the same day.

¶ 4 On April 4, 2012, Prutch filed a special action petition in Maricopa County Superior Court challenging the Resolution. He claimed that Quartzsite fraudulently misrepresented the primary as a special election and that Jewitt should be removed from the Council seat and the seat filled at the May 15, 2012, general election. Quartzsite filed a notice of improper venue, and the Maricopa County Superior Court dismissed the case without objection on April 11. Prutch moved for reconsideration on April 12, arguing that the case should have been transferred to the proper venue instead of dismissed. The court agreed, reinstated the case, and transferred it to La Paz County Superior Court.

¶ 5 Quartzsite moved to dismiss the complaint in La Paz County Superior Court on April 13. It argued that the doctrine of laches barred the complaint because Prutch had acted unreasonably by (1) waiting until the last day permitted by statute to challenge the election, (2) filing the complaint in an improper venue, and (3) failing to object to dismissal of the complaint but then asking for reconsideration the next day. Quartzsite argued that these delays prejudiced it and the "administration of justice" because it had already printed sample ballots for the general election and would be unable to print new ballots in time for early voting if the court ruled in Prutch's favor. Moreover, Quartzsite argued, the trial court did not have time to adequately address the merits of the complaint, and neither party would have time to appeal an adverse ruling before early voting began. Prutch responded to the motion, arguing that he did not act unreasonably. He also moved to proceed ex parte because Quartzsite had not answered the complaint.

¶ 6 At a hearing on April 16, 2012, Prutch moved for default in addition to moving to proceed ex parte. The court denied both motions and then heard arguments on the motion to dismiss. Quartzsite argued that the court did not have enough time to resolve the dispute because early voting would begin on the following Thursday and that Prutch had acted unreasonably by waiting five days to file his complaint and filing it in the wrong venue. Prutch responded that he had no reason to delay the case, had tried to proceed as quickly as possible, and reasonably believed that Maricopa County was a proper venue based on his interpretation of the venue statute.

¶ 7 The court found that venue was improper in Maricopa County and that the case should have been filed in La Paz County. It stated, however, that it was "not sure [Prutch's] conduct was unreasonable." Instead, it lamented that the delay from filing the case in the wrong county prevented it from resolving the dispute in time for early balloting. The court recognized that "there also has to be prejudice shown," and discussed the unfairness a delayed challenge would cause the court and all the participants in the electoral process. The court found prejudice because it did not have time to render a decision that the parties could appeal before the early balloting deadline. The court therefore granted the motion to dismiss on laches "on those grounds."

¶ 8 Prutch timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(A)(1) (West 2013).[2]

## DISCUSSION

### 1. Mootness

¶ 9 During the pendency of this appeal, Quartzsite moved to dismiss this appeal as moot because the general election was held on May 15, 2012, and the relief that Prutch requests is no longer available. This Court

Lizarraga's Council seat, shall be issued a certificate of election by the Town Clerk and shall be sworn in as soon as practicable after passage of this resolution.

2. We cite the current version of applicable statutes when no material revisions have occurred.

denied the motion without prejudice to reconsideration of the issue when resolving the merits of case. Upon reconsideration, we again decline to dismiss this case as moot.

¶ 10 This Court generally declines to address moot issues as a policy of judicial restraint, although this Court is not bound by the case or controversy requirements of the United States Constitution. *Lana A. v. Woodburn,* 211 Ariz. 62, 65, ¶ 9, 116 P.3d 1222, 1225 (App.2005). We will make an exception, however, for matters of public importance or those capable of repetition yet evading review. *Id.* (reviewing the illegal detention of juveniles even though they had been released because it was a question of public importance). Quartzsite argues that we should not exercise discretion to review this case because a similar situation would not likely evade review in the future.

¶ 11 Because this case involves matters of public importance, however, we exercise our discretion to review this case even though the general election has already occurred. Moreover, we note that not all of Prutch's claims are necessarily moot. Prutch has requested, among other remedies, that Jewitt be removed from office because he was elected through fraud and misrepresentation. That claim is still justiciable and the remedy still available.

## 2. Motion to Dismiss Based on Laches

¶ 12 Prutch first argues that the trial court erroneously dismissed his case based on the equitable doctrine of laches. We review the dismissal of a complaint based on laches for an abuse of discretion. *See McComb v. Superior Court (Parker),* 189 Ariz. 518, 525, 943 P.2d 878, 885 (App.1997). A finding of laches is within the trial court's sound discretion, and "absent erroneous interpretation of the law or clearly erroneous factual underpinnings, the trial court's determination can be overturned only if its decision represents an unreasonable judgment in weighing relevant factors." *Id.* (internal quotation marks omitted).

¶ 13 The defense of laches bars a claim when, under the totality of circumstances, the delay in prosecuting the claim "would produce an unjust result." *Harris v. Purcell,* 193 Ariz. 409, 410 n. 2, ¶ 2, 973 P.2d 1166, 1167 n. 2 (1998). The defense is often raised in time-sensitive election cases. *Id.* at 412–13, ¶¶ 15–17, 973 P.2d at 1169–70 (citing *Mathieu v. Mahoney,* 174 Ariz. 456, 459, 851 P.2d 81, 84 (1993) ("Our concern with timeliness stems in part from the notion that disputes concerning election and petition matters must be initiated and heard in time to prepare the ballots for absentee voting to avoid rendering an action moot.") (internal quotation marks omitted)). Equity, however, "does not encourage laches, and the doctrine may not be invoked to defeat justice but only to prevent injustice." *Beltran v. Razo,* 163 Ariz. 505, 507, 788 P.2d 1256, 1258 (App. 1990). Mere delay in pursuing a claim is not enough to establish laches. *Mathieu,* 174 Ariz. at 459, 851 P.2d at 84. A defendant must not only prove that a plaintiff's delay prejudiced the defendant, the court, or the public, but also that the plaintiff acted unreasonably. *Id.* at 459, 461, 851 P.2d at 84, 86.

¶ 14 Here, the trial court erroneously granted dismissal based on laches because it did not find that Prutch had acted unreasonably. Quartzsite concedes that the trial court refused to "state affirmatively that [Prutch] acted unreasonably," but argues that the court nevertheless "tacitly" found that Prutch's "tactical decisions" created "an unreasonable delay." But Quartzsite's concession is a recognition that the record does not support this element of laches. Laches requires a finding that the plaintiff acted unreasonably in causing the delay, and although the court believed that Prutch had erred in filing his petition in Maricopa County, it did not find Prutch's conduct unreasonable. Instead, the court described the delay caused by the filing of the complaint in Maricopa County as "unfortunate," and explained that "in any event," the court was prejudiced because it had no time to adequately address the merits of the case. It ruled, "So, on those grounds, I will grant the Town of Quartzsite's motion to dismiss the matter."

¶ 15 The record is therefore clear that the trial court found laches based solely on prejudice. Because the trial court did not find that Prutch had acted unreasonably, and we

cannot infer such a finding from this record, we vacate the dismissal based on laches and remand for further proceedings.

### 3. Motions for Entry of Default and to Proceed Ex Parte

¶ 16 Prutch next argues that the trial court abused its discretion by denying his motions for entry of default and to proceed ex parte because Quartzsite did not answer the complaint pursuant to § 16–675(A). Section 16–675(A) provides that a defendant shall answer a complaint "within five days after service of the summons, exclusive of the day of service. If the answer is not filed within such period, the court shall proceed with the hearing of the contest ex parte."

¶ 17 Although Quartzsite did not file an answer, its motion to dismiss was a proper defense that procedurally precluded entry of default. Arizona Rule of Civil Procedure ("Rule") 55(a) allows entry of default only when the defendant fails "to plead or otherwise defend as provided by these Rules." *See also Waltner v. JPMorgan Chase Bank,* 231 Ariz. 484, 488, ¶ 16, 297 P.3d 176, 180 (App.2013) (recognizing that "Rule 55(a) governs the entry of default"). Rule 12 permits a defendant to move to dismiss a complaint based on improper venue before filing a responsive pleading. Ariz. R. Civ. P. 12(b)(3). Although a motion to dismiss is not a pleading under Rule 7(a), it satisfies the "otherwise defends" requirement for avoiding entry of default under Rule 55(a). *Coulas v. Smith,* 96 Ariz. 325, 329, 395 P.2d 527, 529 (1964) (recognizing that "otherwise defends" refers to a motion to dismiss, among other things); *see also Waltner,* 231 Ariz. at 488, ¶ 18, 297 P.3d at 180 (noting that "a motion to dismiss treated as a summary judgment motion tolls the time for filing an answer").

¶ 18 We thus hold that Quartzsite properly otherwise defended against the action by moving to dismiss for improper venue within the time to file an answer. Quartzsite also properly responded to the summons and appeared at the hearing to defend the complaint. Under these circumstances, the trial court did not abuse its discretion in denying Prutch's motions for entry of default and to proceed ex parte.

### 4. Improper Venue

¶ 19 Prutch argues that the trial court erred in finding that Maricopa County was an improper venue because A.R.S. § 16–674(B) does not use mandatory language but provides that an election challenge *"may* be brought in the superior court of the county in which the elector resides." (Emphasis added.) We rejected a similar argument about permissive language of a venue statute in *State v. Mileham,* 1 Ariz.App. 67, 399 P.2d 688 (1965). There, the relevant statute provided that "criminal actions involving crimes punishable by death or life imprisonment ... may be appealed to the supreme court." *Id.* at 68, 399 P.2d at 689 (citing A.R.S. § 13–1711). We held that, despite the use of the word "may" the statute meant that "criminal actions involving crimes punishable by death or life imprisonment ... *if appealed, shall* be appealed to the supreme court." *Id.* at 69, 399 P.2d at 690. Similarly in this case, the use of the word "may" in § 16–674(B) is not permissive, but means that an election challenge "[*if brought, shall* ] be brought in the superior court of the county in which the elector resides." Because Prutch resided in La Paz County, he had to file the action there.

¶ 20 We reject Prutch's contention that § 16–674(B) must be read in conjunction with § 16–672(B) to permit him to file his complaint in Maricopa County. Although § 16–672(B) states that an election challenge "may be brought in the superior court of the county in which the person contesting resides or in the superior court of Maricopa County," it applies only to state elections and has no application here. Section 16–674, on the other hand, does not give the option of filing in Maricopa County. We thus affirm the trial court's finding that Maricopa County Superior Court was an improper venue for this action.

### 5. Merits of the Complaint

¶ 21 Prutch contends that he should prevail on the underlying merits of his complaint because the facts are not in dis-

pute and the case can be resolved as a purely legal issue. As noted above, *see infra* ¶ 11, however, Prutch alleged "misrepresentation and fraud" regarding the representation of the primary election as a special election. Such issues may present factual questions that the trial court has not yet resolved. We thus decline to address the merits of Prutch's complaint.[3]

### 6. Attorneys' Fees and Costs

 ¶ 22 Prutch requests attorneys' fees and costs incurred at trial and on appeal pursuant to A.R.S. § 12–2030(A) and Arizona Rule of Civil Appellate Procedure 21 because this is a mandamus action. To qualify for fees under § 12–2030, "a party must show that it: (1) prevailed on the merits (2) in a civil action (3) filed against ... a political subdivision to perform a duty imposed by law." *Hess v. Purcell,* 229 Ariz. 250, 253, ¶ 7, 274 P.3d 520, 523 (App.2012) (internal quotation marks omitted). Because the court dismissed this case before addressing the merits, Prutch is not entitled to attorneys' fees and costs in the trial court at this time, and we deny the request without prejudice. However, as the prevailing party on appeal, Prutch is entitled to his costs upon compliance with Rule 21.

### CONCLUSION

¶ 23 We vacate the dismissal of Prutch's complaint based on laches and remand for further proceedings consistent with this decision.

3. We also decline to address Quartzsite's argument that it could not hold a primary and a general election to fill the vacated seat. We leave the issue for the trial court to consider on remand. However, Quartzsite's concern that the unfilled vacancy would have left the Town without a government during the pendency of the primary and general elections is unfounded. Article 22, Section 13 of the Arizona Constitution requires that "[t]he term of office of every officer to be elected or appointed under this Constitution or the laws of Arizona shall extend until his successor shall be elected and shall qualify." In accordance with this provision, the legislature requires that persons appointed to fill a vacant state or county office "shall remain in office until the person elected" takes office. A.R.S. § 16–

CONCURRING: MAURICE PORTLEY, Presiding Judge, and PATRICIA A. OROZCO, Judge.

230(B); *see also* A.R.S. § 38–295(B) ("Every officer shall continue to discharge the duties of the office, although the term has expired, until a successor has qualified.") Although § 16–230 does not expressly apply to city elections, city or town elections "shall conform to the provisions of law relating to the general election of county officers as nearly as possible." A.R.S. § 9–821. Thus, because the Town Council appointed Jewitt to the vacancy pending the election—whether it be a special, primary, or a general election—Jewitt would remain in office until his successor qualified for the office, leaving the Town with a functioning government.

