NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LINDA ANN ISGRO, *Plaintiff/Appellant*,

*v.*

WELLS FARGO BANK, N.A., et al., *Defendants/Appellees*.

No. 1 CA-CV 18-0156
FILED 1-22-2019

Appeal from the Superior Court in Maricopa County
No. CV2015-008317
The Honorable Roger E. Brodman, Judge

**AFFIRMED**

COUNSEL

Hymson Goldstein Pantiliat & Lohr, PLLC, Scottsdale
By Eddie A. Pantiliat, Evan B. Schechter
*Counsel for Plaintiff/Appellant*

Curley & Allison, LLP, Phoenix
By Roger D. Curley, Kiernan S. Curley
*Counsel for Defendant/Appellee Wells Fargo Bank, N.A.*

Gust Rosenfeld P.L.C., Phoenix
By Scott A. Malm, Mina C. O'Boyle
*Counsel for Defendant/Appellee First American Title Insurance Company*

Fidelity National Law Group, Phoenix
By Patrick J. Davis, David M. LaSpaluto
*Counsel for Defendant/Appellee Security Title Agency, Inc.*

―――――――――――――――

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Kenton D. Jones joined.

―――――――――――――――

**W I N T H R O P**, Judge:

¶1        Appellant Linda Ann Isgro challenges the trial court's rulings denying leave to amend her complaint to add four new plaintiffs and granting summary judgment to Wells Fargo Bank, N.A. ("Wells Fargo"), First American Title Insurance Company ("First American"), and Security Title Agency, Inc. ("Security Title") (collectively "Appellees") on statute of limitations and laches grounds.  We affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        This appeal arises out of the administration of the estate of Goldie Brown (the "Estate"), which opened in probate in the late 1970s. Brown's will (the "Will") left one fifth of the Estate's assets to Ron Porter and Oma Lee Bergman, her niece and nephew, and divided the remaining assets into four equal shares, one of which was held in trust for Vada Chrisman Roberts ("Trust B").  Vada Chrisman Roberts passed away in 1991, leaving Trust B payable to her four children, including John Roberts, Isgro's father.  John Roberts predeceased Vada Chrisman Roberts, leaving his share payable to Isgro and her two siblings.

¶3        In this lawsuit, Isgro alleges Appellees acted improperly while administering either the Estate or its related trusts many years ago. We set forth the undisputed facts regarding the Appellees' involvement below.

        I.        *Wells Fargo, the Estate, and Trust B*

¶4        First Interstate Bank of Arizona, N.A. ("First Interstate"), now owned by Wells Fargo, served as personal representative for the Estate and as trustee of Trust B.  First Interstate wrote Isgro in 1992 to inform her that it was ready to make cash distributions of her Trust B share, but that it was not possible to liquidate the land contracts Trust B held at that time.  First Interstate wrote that Isgro and the other beneficiaries "would receive the contracts outright as . . . interest beneficiar[ies]" and asked how she would

2

like the property to be titled. She responded that she would accept title as joint tenants with her husband, Carmelo P. Isgro.

¶5        Isgro also received assignments of her beneficial interest in three other trusts, referred to as "Trust No. 6588," "Trust No. 6369," and "CSC Trust No. 9950" in 1992. Isgro received approximately $122,000 in distributions in 1992, with the last distribution occurring in December. Shortly after receiving her last distribution, Isgro contacted First Interstate to inquire about a parcel, and she was reassured the bank "would defend and send a representative to protect the best interests of the Estate."

## II.        First American and Trust No. 6588

¶6        The Estate conveyed certain property to Trust No. 6588 in 1978. Isgro received payments from Trust No. 6588 through First American, its then-administrator, until 1993. First American closed Trust No. 6588 in 1995.

¶7        Isgro communicated with First American in 1996 expressing concern that certain payments owed to her had become delinquent. Nearly twenty years later, she alleged that "from 1993 up until the present time certain parcels of real estate whereby Isgro held recorded interests . . . have been acquired . . . for values that total more than $900,000,000." She also alleged she is entitled to "financial benefits" from these "subsequent transactions."

## III.        Security Title and Trust No. 6369

¶8        In 1992, Security Title became trustee of Trust No. 6369, which had been established to hold certain real property and land grazing rights. Prior to Security Title's involvement, the original Trust No. 6369's "Second Beneficiary," Goldie Brown Homestead, reached an agreement with the original "first beneficiaries" under which it agreed to pay four million dollars over time for the trust property. Isgro, as a subsequent "first beneficiary," received annual payments from Trust No. 6369 from 1993 to 1997 stemming from these transactions.

¶9        Isgro expected to receive another payment in 1998 and contacted Security Title when it did not arrive. According to Isgro, a Security Title employee told her (1) the 1997 payment was her last payment; (2) she had received her full share of payments; and (3) Trust No. 6369 had no more assets. Isgro did not follow-up on this conversation.

¶10      In 1998, Security Title conveyed the Trust No. 6369 property to Goldie Brown Ranch Limited Partnership ("GBRLP") and closed the trust. GBRLP sold the property to the City of Scottsdale in 1999.

     *IV.    The Current Dispute*

¶11      In early 2015, Isgro wrote Appellees on behalf of "the first beneficiaries of the Goldie C. Brown Estate" alleging each had breached its fiduciary duties in the transactions described above and demanding compensation. She then sued in September 2015 alleging breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, fraud, and negligence.

¶12      As against Wells Fargo, Isgro alleged having been told "[s]ubsequent to 1993 . . . that any real estate that remained with the Estate was worthless, mountainous with steep slopes, and unable to be developed." She also alleged that Wells Fargo "executed a Final Plat" on land she had "recorded interests on" in 2000 and that she "never received notice or financial compensation" relating to the "Final Plat." She further alleged that Wells Fargo, as the personal representative of the Estate, was responsible for the alleged misconduct of First American and Security Title.

¶13      As for First American, Isgro alleged that, after receiving the last payment from Trust No. 6588 in 1993, First American told her that "ten land contracts were delinquent." She further alleged having provided First American with "documentation" regarding the contracts in 1995 and 1996, but First American "failed to protect the assets of the Estate."

¶14      As for Security Title, Isgro alleged she was entitled to a "1.67 percent" share of the purchase funds GBRLP received from the City of Scottsdale in 1999. She also contends Security Title failed to pay her share of a reimbursement Trust No. 6369 received from the state relating to grazing leases.

¶15      First American moved for summary judgment in April 2017, contending, among other things, that Isgro's claims were time-barred under the applicable statutes of limitations and the doctrine of laches. Shortly thereafter, Isgro moved for leave to amend her complaint to add four new plaintiffs—Porter, Bergman, and her siblings Gail Leonard Turner and Robert Leonard. Each Appellee opposed the proposed amended complaint. Wells Fargo and Security Title also moved for summary judgment on statute of limitations and laches grounds.

¶16　　　The trial court denied leave to amend and granted summary judgment on Isgro's contract claims.  In denying leave to amend, the court found that adding the new plaintiffs would "substantially change the size of the claimed damages" and "raise[] new issues requiring preparation for factual discovery which would not otherwise have been necessitated nor expected."  The court also noted that the discovery cutoff was less than forty days away and that Isgro "present[ed] no persuasive reason for her delay in filing an amendment."  The court also determined that the proposed amendments were futile because "[t]here is a two-year statute of limitations for breach of trust" and "[t]he four new plaintiffs have known about this cause of action for more than two years."

¶17　　　The court later granted summary judgment to all three Appellees, finding the applicable statutes of limitations and laches barred Isgro's tort claims.  The court entered final judgment and awarded attorneys' fees to Appellees pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-341.01(A) and 14-11004.  Isgro timely appealed the judgment and the denial of her motion for leave to amend the complaint.  We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

**ANALYSIS**

I.　　　*The Court Did Not Err in Granting Summary Judgment*

¶18　　　On review of a grant of summary judgment, we determine *de novo* whether any genuine issues of material fact exist and whether the trial court properly applied the law.  *Sign Here Petitions LLC v. Chavez*, 243 Ariz. 99, 104, ¶ 13 (App. 2017).  We view the facts and reasonable inferences in the light most favorable to Isgro as the non-prevailing party.  *Id.*  Summary judgment should be granted only "if the facts produced in support of [a] claim . . . have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim."  *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990).

A.　　　*Statute of Limitations*

¶19　　　Each of Isgro's tort claims is subject to a two- or three-year limitations period.[1]  *See* A.R.S. § 14-11005(C)(2) ("[A] judicial proceeding by

---

[1]　　　The trial court granted summary judgment on Isgro's contract claims based on its conclusion that "'[a] trustee who fails to perform his duties . . . is not liable to the beneficiary for breach of contract.'"  *In re Naarden Tr.*, 195

a beneficiary against a trustee for breach of trust must be commenced within two years after the . . . termination of the beneficiary's interest in the trust."); A.R.S. § 12-543(3) (setting a three-year limitations period for fraud claims); *Coulter v. Grant Thornton, LLP*, 241 Ariz. 440, 444, ¶ 9 (App. 2017) (explaining the two-year limitations period of A.R.S. § 12-542 applies to breach of fiduciary duty, professional negligence, and negligent misrepresentation claims). "Given our preference to resolve claims on their merits, the statute of limitations defense is not favored." *Coulter*, 241 Ariz. at 444, ¶ 7 (internal quotation omitted). "Nevertheless, claims that are clearly brought outside the relevant limitations period are conclusively barred." *Id.*

**¶20**     Generally, a cause of action accrues, and the limitations period begins to run when the plaintiff becomes aware of information that would put a reasonable person on notice to investigate whether a claim exists. *Walk v. Ring*, 202 Ariz. 310, 316, ¶¶ 22-23 (2002). Accrual thus normally presents a question of fact for the jury. *Doe v. Roe*, 191 Ariz. 313, 323, ¶ 32 (1998). Here, however, the Appellees presented undisputed evidence showing Isgro had sufficient knowledge to investigate the alleged wrongdoing many years before she sued in 2015.

**¶21**     Wells Fargo established that Isgro understood her last distribution would arrive in December 1992, having already received approximately $122,000, and that she received assignments of her beneficial interest in Trust No. 6588, Trust No. 6369, and CSC Trust No. 9950 during that same timeframe. It also established that she contacted First Interstate to request that it foreclose on an unidentified parcel shortly after receiving her last distribution but did nothing thereafter until she sent her 2015 demand letter.

**¶22**     First American established that it made its last payment to Isgro in 1993 and closed Trust No. 6588 in 1995. It also established that Isgro communicated with First American demanding it act upon allegedly delinquent accounts in 1996. Despite believing First American did not meet that demand, she did not take further action until 2012.

**¶23**     Security Title established that Isgro knew her Trust No. 6369 payments would start in 1993. When those payments ended in 1998, she

---

Ariz. 526, 529, ¶ 12 (App. 1999) (quoting Restatement (Second) of Trusts § 197 cmt. b (1959)). Isgro does not challenge that ruling on appeal.

contacted Security Title and was told she would not receive any further payments.  She took no further action for approximately fourteen years.

### 1.  Discovery Rule

**¶24**       While Isgro does not dispute these facts, she contends the discovery rule tolled the applicable limitations periods because she "believed the Appellees when they indicated everything was satisfactory" and had "no reason to question anything."  We disagree.

**¶25**       It is the plaintiff's burden to show the discovery rule applies. *Wyckoff v. Mogollon Health All.*, 232 Ariz. 588, 591, ¶ 9 (App. 2013).  The statements Isgro claims to have "believed"—and apparently chose not to investigate—were made in the 1990s.  She contends she was not "led to question whether Appellees had concealed anything in the early/mid 1990s" until she purportedly "discovered numerous documents regarding the Estate and Trusts that she had never received or seen before," but offers only her own conclusory testimony in support.  This self-serving testimony is, by itself, insufficient to overcome summary judgment.  *See e.g.*, *Florez v. Sargeant*, 185 Ariz. 521, 526 (1996).  Moreover, the discovery rule does not allow Isgro to profess longstanding ignorance when a reasonable investigation—which ostensibly would have included searching for and reviewing the Estate and trust documents she claims to have first discovered in 2014—would have alerted her to what she now alleges to have been Appellees' misconduct many years earlier.  *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 589 (1995) (The discovery rule generally applies only where "[t]he injury or the act causing the injury, or both, have been difficult for the plaintiff to detect.") (internal quotation omitted).

### 2.  Fraudulent Concealment

**¶26**       Citing *Walk*, Isgro also contends actual knowledge is required to trigger the statute of limitations for claims alleging a breach of the fiduciary duty of disclosure.  There, our supreme court held "*if fraudulent concealment is established*, the [plaintiff] is relieved of the duty of diligent investigation required by the discovery rule and the statute of limitations is tolled until such concealment is discovered, or reasonably should have been discovered."  *Walk*, 202 Ariz. at 319, ¶ 35 (internal quotation omitted) (emphasis added).

**¶27**       Fraudulent concealment requires clear and convincing evidence. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 498 n.24, ¶ 98 (2002).  The only

evidence Isgro offered to show fraudulent concealment was her own conclusory testimony. Bald accusations of fraudulent concealment do not constitute clear and convincing evidence. *See KCI Rest. Mgmt. LLC v. Holm Wright Hyde & Hays PLC*, 236 Ariz. 485, 489, ¶ 14 (App. 2014). Isgro thus failed to show that Appellees did anything to prevent her from inquiring into or investigating her rights well before 2014. *See Anson v. Am. Motors Corp.*, 155 Ariz. 420, 427 (App. 1987) ("In general, to toll the statute of limitations the fraud must prevent inquiry, elude investigation or mislead the party who claims the cause of action."). And the trial court did not err in finding that her claims were time-barred based upon the undisputed evidence discussed above.

### B. Laches

**¶28** Laches generally will bar a claim when a plaintiff unreasonably delays filing suit and the delay prejudices the opposing parties. *See League of Ariz. Cities & Towns v. Martin*, 219 Ariz. 556, 558, ¶ 6 (2009); *In re Indenture of Tr. Dated January 13, 1964*, 235 Ariz. 40, 48, ¶ 22 (App. 2014). Because we affirm the trial court on the limitations issue, we need not reach its ruling on laches.[2]

### II. The Trial Court Did Not Abuse Its Discretion in Denying Leave to Amend the Complaint

**¶29** Isgro also contends the trial court erred in denying leave to amend her complaint to add the four new plaintiffs. When a party seeks leave to amend before trial, it should be "freely given when justice requires." Ariz. R. Civ. P. 15(a)(2). A court may deny leave to amend, however, if it finds "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments or undue prejudice to the opposing party." *Carranza v. Madrigal*, 237 Ariz. 512, 515, ¶ 13 (2015) (internal quotation omitted). We review the denial of a motion for leave to amend the complaint for an abuse of discretion. *Timmons v. Ross Dress For Less, Inc.*, 234 Ariz. 569, 572, ¶ 17 (App. 2014). "In determining whether the

---

[2] We do note, however, that the record in this case adequately supports the trial court's findings concerning unreasonable delay on the part of Isgro, the prejudice to Appellees and to the administration of the Estate as a result of such delay, and the inequity that would result if Isgro were allowed to pursue her stale claims. *See Prutch v. Town of Quartzsite*, 231 Ariz. 431, 435, ¶ 13 (App. 2013) ("[L]aches bars a claim when, under the totality of circumstances, the delay in prosecuting the claim would produce an unjust result.") (internal quotation omitted).

court abused its discretion, we presume that the facts alleged in the [proposed amended] complaint are true." *Id.* (internal quotation omitted).

### A. Undue Delay

**¶30** The proposed new plaintiffs are Isgro's siblings and cousins who allegedly "had a share in the same land/Estate assets." Isgro acknowledged having "discovered the basis for these claims . . . after her mother passed away in late 2012" and having written demand letters on their behalf in 2015. She characterizes her two-year delay in seeking leave to amend the complaint as an "understandable and honest mistake" because she, as a *pro per* litigant, "mistakenly thought they could come in at any time." We note Isgro retained her current counsel in December 2015 yet still chose not to seek leave to amend until May 2017. On this record, the trial court did not abuse its discretion in finding undue delay.

### B. Undue Prejudice

**¶31** Undue prejudice for purposes of denying leave to amend can be found in "the inconvenience and delay suffered when the amendment . . . inserts new parties into the litigation." *Carranza*, 237 Ariz. at 515, ¶ 13 (internal quotation omitted). Isgro contends only minimal additional discovery would have been needed because the new plaintiffs' claims are "identical" to hers. This assertion conflicts with her admission that Bergman and Porter not only were beneficiaries of a different trust but were entitled to different percentages of that trust. Bergman and Porter also directly received one fifth of the Estate under the Will.

**¶32** Isgro attempts to dismiss these differences by arguing her claims were "for damage to the Estate as a whole," but neither she nor any of the proposed new plaintiffs purported to represent the Estate. We thus conclude the trial court did not abuse its discretion in denying leave to amend the complaint based upon undue prejudice.[3] *See Haynes v. Syntek Fin. Corp.*, 184 Ariz. 332, 336 (App. 1995).

### III. The Trial Court Did Not Abuse Its Discretion in Awarding Appellees Attorneys' Fees

**¶33** The Appellees requested, and the trial court awarded, attorneys' fees pursuant to A.R.S. § 14-11004 and § 12-341.01(A). We note,

---

[3] Because we conclude the trial court did not abuse its discretion in finding undue delay and prejudice, we need not decide whether the proposed new plaintiffs' claims were futile.

however, § 12-341.01(A) only applies to disputes "arising out of a contract," and this court has held lawsuits arising out of a trust relationship are not suits "arising out of a contract" for purposes of awarding attorneys' fees under § 12-341.01(A). *See e.g.*, *Owner-Operator Indep. Drivers Ass'n v. Pac. Fin. Ass'n, Inc.*, 241 Ariz. 406, 416, ¶ 39 (App. 2017). Nevertheless, because the trial court also based its award on § 14-11004, we will affirm its decision absent an abuse of discretion. *See City of Phoenix v. Geyler*, 144 Ariz. 323, 330 (1985) ("We recognize the obligation of appellate courts to affirm where any reasonable view of the facts and law might support the judgment of the trial court."); *Peterson v. City of Surprise*, 244 Ariz. 247, 253, ¶ 25 (App. 2018).

¶34        Isgro generally challenges the award of "$266,975.30 in attorney[s'] fees to Defendants," but she did not oppose Wells Fargo's or Security Title's fee applications. She therefore has waived her challenges to those awards. *See Englert v. Carondelet Health Network*, 199 Ariz. 21, 26, ¶ 13 (App. 2000).

¶35        As for the fee award to First American, Isgro contends the trial court should not have awarded fees because it "never reached the actual merits of [her] claims." A.R.S. § 14-11004(A) does not impose such a limitation. Section 14-11004(A) authorizes a trustee to recover reasonable fees that "arise out of and that relate to the good faith defense or prosecution of a judicial . . . proceeding involving the administration of the trust, regardless of whether the defense or prosecution is successful." First American obviously asserted a good faith defense to Isgro's claims for purposes of § 14-11004(A) and is therefore entitled to an award of fees for its defense.

¶36        Isgro next contends the fee award will cause hardship but only argues First American "is a billion-dollar company." First American's size has no bearing on whether a fee award would cause Isgro to suffer hardship, and she offered no evidence to show such hardship would arise. *See Rudinsky v. Harris*, 231 Ariz. 95, 102, ¶ 32 (App. 2012) ("[T]he party asserting financial hardship has the burden of coming forward with *prima facie* evidence of financial hardship.").

¶37        Finally, Isgro asserts the trial court should not have awarded First American any fees it incurred before filing its answer because it did not request fees in either its joinder in Wells Fargo's motion to dismiss or its separate motion to dismiss, both of which predated its answer. Citing *Balestrieri v. Balestrieri*, 232 Ariz. 25 (App. 2013), she contends a defendant who does not request fees in a motion to dismiss forfeits any claim to attorneys' fees.

10

¶38          Arizona Rule of Civil Procedure 54(g)(1), which was revised to codify *Balestrieri*, only requires that a fee claim be made "in the pleadings or in a Rule 12 motion filed before the movant's responsive pleading." Ariz. R. Civ. P. 54(g)(1). First American requested attorneys' fees in its answer, thus satisfying Rule 54(g)(1). Moreover, *Balestrieri* is distinguishable because the court there granted defendant's motion to dismiss and the plaintiff never received notice that fees would be sought. *Balestrieri*, 232 Ariz. at 28, ¶ 11 ("[W]e hold that such a defendant forfeits his claim for fees by waiting to ask for fees until after the superior court grants his motion to dismiss."). Isgro had ample notice of First American's fee claim. We thus affirm it.

> *IV.    Appellees May Recover Reasonable Attorneys' Fees and Costs on Appeal*

¶39          Appellees request their attorneys' fees incurred on appeal pursuant to A.R.S. § 14-11004(A). We may order the attorneys' fees be paid by any other party to the action or the trust at issue. A.R.S. § 14-11004(B); *In re Estate of King*, 228 Ariz. 565, 572-73, ¶ 29 (App. 2012). Isgro's claims arise out of the administration of the Estate and its related trusts, all of which have been closed for many years and no longer have resources to pay a fee award. We therefore award Appellees their reasonable attorneys' fees and costs, to be paid by Isgro, upon compliance with Arizona Rule of Civil Appellate Procedure 21.

**CONCLUSION**

¶40          We affirm the trial court's rulings.

